IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **SHEMAR DIJOHN BRADSHAW,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 4:23-cv-87-SDJ-KPJ |
| § | |
| **ALLEN POLICE DEPARTMENT,** § | |
| § | |
| **Defendant.** § | |

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant Allen Police Department's ("Defendant") Second Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted and Brief in Support (the "Second Motion to Dismiss") (Dkt. 22), to which Plaintiff Shemar Dijohn Bradshaw ("Plaintiff") filed a response (the "Response") (Dkt. 23) and Affidavit in Opposition of Defendant's Motion to Dismiss (the "Supplemental Response") (Dkt. 24), and Defendant filed a reply (the "Reply") (Dkt. 26). For the reasons that follow, the Court recommends that the Second Motion to Dismiss (Dkt. 22) be **GRANTED**.

### I.   BACKGROUND

#### A.   Procedural History

On July 20, 2022, Plaintiff, proceeding *pro se*, filed this action in the Justice Court, Precinct 3, Collin County, Texas (the "Justice Court") against Defendant. *See* Dkt. 1. On September 26, 2022, Plaintiff filed an affidavit in the Justice Court requesting a "transfer" of venue to the Northern District of Texas, representing that his claims arose under 42 U.S.C. § 1983. *See*

Dkt. 3 at 1. On November 23, 2022, the Justice Court ordered the matter to be "transferred" to the Northern District of Texas. *See* Dkt. 5.

On January 9, 2023, United States Magistrate Judge David Horan entered a Memorandum Opinion and Order (Dkt. 6) transferring this case to the Sherman Division of the Eastern District of Texas. *See* Dkt. 6. Judge Horan explained that there had been "[m]ultiple procedural deficiencies" in the "removal" to federal court, including that there is "no mechanism to 'transfer venue' from state court to federal court" and a plaintiff is not allowed to remove an action under 28 U.S.C. §§ 1441, 1443. *See id.* at 2. Nevertheless, Judge Horan found that there was no basis to *sua sponte* remand the lawsuit for "purely procedural defects" and, thus, treated the action as a removal to federal court. *Id.* at 2, 5. Under the removal statute, a case must be removed to the "district court . . . for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). As this lawsuit originated in Collin County, Judge Horan determined that venue was proper in the Sherman Division of the Eastern District of Texas. *See* Dkt. 6 at 2, 6.

On February 13, 2023, the Court issued an Order and Advisory (Dkt. 9), which ordered the parties to replead as necessary to comply with the Federal Rules of Civil Procedure and the Court's Local Rules. Dkt. 9 at 2. The Court further ordered that Plaintiff file an amended complaint, if any, within thirty days. *Id.* Plaintiff subsequently filed the "Amended Complaint" (Dkt. 11), the "Reamended Complaint" (Dkt. 13), the second "Reamended Complaint" (Dkt. 15), and the third "Reamended Complaint" (Dkt. 17).

On March 27, 2023, summons was issued to Defendant. *See* Dkt. 18. On April 10, 2023, Defendant filed its first motion to dismiss (the "First Motion to Dismiss") (Dkt. 19). Seven days later, Plaintiff filed the fourth "Reamended Complaint" (the "Fifth Amended Complaint") (Dkt. 20). On June 13, 2023, "mindful that Plaintiff is proceeding *pro se*" the Court found the Fifth

Amended Complaint (Dkt. 20) timely and denied the First Motion to Dismiss (Dkt. 19) as moot. *See* Dkt. 21 at 2–3.

**B.      Factual Background**

In the Fifth Amended Complaint (Dkt. 20), Plaintiff alleges that, on January 28, 2022, Defendant's officers unlawfully arrested him and searched his vehicle without his consent. *See* Dkt. 20 at 2. During the search, Plaintiff alleges that Defendant's officers uncovered "a bottle of liquid which they proclaimed to be a dangerous drug." *Id.* Plaintiff alleges that this "dangerous drug" was "in fact his allergy bottle." *Id.* In response to Defendant's accusation that he possessed an unlawful substance, Plaintiff alleges that "he demanded . . . a field test" to determine the contents of the bottle. *See id.* However, Plaintiff alleges that the officers on the scene "were not adequately trained to [conduct the] field test . . . and that their official custom [is] to send alleged evidence into their labs for testing." *Id.* Plaintiff contends that such an "official custom" or "training policy" is "inadequate." *Id.* He further argues that by failing to train officers to conduct field tests, Defendant "deprived [Plaintiff] of his [F]ourth [A]mendment constitutional right to be free from an unlawful seizure by which the policymaker creating the policy has construable knowledge to be aware of." *Id.* After the purported constitutional violation, Plaintiff alleges that a magistrate judge found there was not probable cause supporting his arrest on the drug charges and, therefore, the criminal case against him was terminated. *See id.*

From these allegations, Plaintiff alleges a § 1983 claim based on an underlying constitutional tort—Fourth Amendment malicious prosecution. *Id.* at 3. He argues that Defendant is liable because, as the "policymaker," Defendant's "failure to adequately train [its] officers" is "arguably the main caus[e]" of his damages. *See id.* Plaintiff further seeks $2,000,000.00 in damages and "injunctive relief . . . to prevent . . . future civil-rights violations." *Id.*

3

C.  **Motion to Dismiss**

On June 26, 2023, in response to Plaintiff's Fifth Amended Complaint (Dkt. 20), Defendant filed the Second Motion to Dismiss (Dkt. 22), wherein it contends that it is not an "independent entity, subject to suit." Dkt. 22 at 5. Defendant argues that "entities without a separate jural existence . . . are not subject to suit." *Id.* at 5–6 (internal quotation mark omitted). As Plaintiff "failed to plead or prove that the City of Allen has taken explicit steps to grant [Defendant] jural authority," Defendant concludes that Plaintiff has "failed to state a claim upon which relief can be granted." *Id.* at 6. Defendant further argues that, even if it was a jural entity, Plaintiff failed to plead a constitutional violation and municipal policy causing said violation. *See id.* at 7–10.

In the Response (Dkt. 23), Plaintiff fails to answer Defendant's jural entity argument. Instead, Plaintiff cites several cases without discussing how that authority applies to the present action. *See generally* Dkt. 23. Plaintiff also filed the Supplemental Response (Dkt. 24),[1] wherein Plaintiff argues that he "is not required to allege a parties [sic] capacity to sue or be sued." Dkt. 24 at 1. Plaintiff further argues that he sufficiently alleged a constitutional violation caused by the municipal policy. *See id.* at 2.

---

[1] In the Reply (Dkt. 26), Defendant "objects and moves to strike Plaintiff's 'Affidavit' as it is 'neither sworn nor its contents stated to be true and correct nor stated under penalty of perjury.'" Dkt. 26 at 2 (quoting *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305–06 (5th Cir. 1988)). Defendant further contends that "Plaintiff's 'Affidavit' should not be considered by the Court in connection with the Rule 12(b)(6) motion as 'the Court may not look beyond the pleadings in ruling on the motion.'" *Id.* (quoting *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996)).

Under Local Rule CV-7, every motion "must be filed as a separate document." Loc. R. CV-7(a). Thus, to the extent Defendant moves to strike Plaintiff's Supplemental Response (Dkt. 24), the Court declines to do so. In addition, although Plaintiff styles the Supplemental Response (Dkt. 24) as an affidavit, it adds no factual allegations. Instead, the Supplemental Response (Dkt. 24) merely makes additional legal arguments. Therefore, as Plaintiff is *pro se*, the Court considers the Supplemental Response (Dkt. 24) where relevant. However, the Court cautions Plaintiff that, under Local Rule CV-7, a "response . . . shall be contained in one document." Loc. R. CV-7(d). In future filings, Plaintiff will be expected to comply with the Local Rules.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). "In evaluating motions to dismiss filed under Rule 12(b)(6), the court 'must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th. Cir. 1986)). "Further, '[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor.'" *Id.* (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). However, courts are "not bound to accept as true 'a legal conclusion couched as a factual allegation.'" *In re Ondova Ltd.*, 914 F.3d 990, 993 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"The well-pleaded facts must permit the court 'to infer more than the mere possibility of misconduct.'" *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That is, the complaint "must allege enough facts to move the claim 'across the line from conceivable to plausible.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011), *as revised* (Dec. 16, 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether the plausibility standard has been met is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 663–64).

At the motion to dismiss stage, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen v. Vertafore, Inc.*, 28 F.4th 613,

616 (5th Cir. 2022) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

## II.     ANALYSIS

### A.     Jural Entity

In the Second Motion to Dismiss (Dkt. 22), Defendant argues that it is not a jural entity subject to suit. *See* Dkt. 22 at 5–6. Although Plaintiff provided no counterargument in the Response (Dkt. 23), he argues in the Supplemental Response (Dkt. 24) that he has no obligation, at this stage, to allege Defendant's capacity to be sued. Dkt. 24 at 1. Plaintiff is mistaken.

Under Rule 17 of the Federal Rules of Civil Procedure, the capacity to sue or be sued is determined "by the law of the state where the court is located." *See* FED. R. CIV. P. 17(b)(3). In Texas, home rule cities,[2] like the City of Allen, are "allowed to designate whether one of its own subdivisions can be sued as an independent entity." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991). Without such an authorization, lawsuits may only proceed against the city—not a subdivision thereof. *See id.* at 313 & n.1 (collecting cases). Thus, "unless the true political entity has taken explicit steps to grant the servient agency . . . jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313–14 (first citing *Kirby Lumber Corp. v. Louisiana*, 293 F.2d 82, 83 (5th Cir. 1961); then citing *Taylor v. Adm'r of Small Bus. Admin.*, 722 F.2d 105, 110–11 (5th Cir. 1983); and then citing *J.C. Driskill, Inc v. Abdnor*, 901 F.2d 383, 386 (4th Cir. 1990)).

---

[2] In Texas, "[c]ities having more than five thousand (5000) inhabitants may, by a majority vote of the qualified voters of said city," adopt a home rule charter. *See* TEX. CONST. art. XI, § 5(a). Doing so permits the city to govern itself independently, provided its ordinances do not "contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." *See id.*; *Forwood v. City of Taylor*, 214 S.W.2d 282, 286 (Tex. 1948) ("It was the purpose of the Home-Rule Amendment and the enabling statutes to bestow upon accepting cities and towns of more than 5000 population full power of self-government, that is, full authority to do anything the legislature could theretofore have authorized them to do." (internal citations omitted)).

The plaintiff has the burden of alleging that the defendant "has the capacity to be sued." *See, e.g.*, *Hutchinson v. Box*, No. 10-cv-240, 2010 WL 5830499, at *1 (E.D. Tex. Aug. 20, 2010) (quoting *Propes v. Plano Police Dep't*, No. 03-cv-87, 2005 WL 1177880, at *4 (E.D. Tex. May 18, 2005)), *R. & R. adopted*, 2011 WL 839864 (E.D. Tex. Feb. 17, 2011); *see also Darby*, 939 F.2d at 314 (finding claims were subject to dismissal because the plaintiff "failed to show that the City of Pasadena . . . granted [the defendant] the capacity to engage in separate litigation"). If the plaintiff "fails to allege or demonstrate that such defendant is a separate legal entity having jural authority, then claims against that entity" are subject to dismissal. *See Hutchinson*, 2010 WL 5830499, at *1 (citing *Propes*, 2005 WL 1177880, at *4).

In the present case, Plaintiff fails to allege that the City of Allen granted Defendant the capacity to sue and be sued. Nowhere in the Fifth Amended Complaint (Dkt. 20), Response (Dkt. 23), or Supplemental Response (Dkt. 24) does Plaintiff mention any such facts. *See generally* Dkts. 20, 23–24. Rather, Plaintiff appears to rest on the assertion—without supporting authority—that he need not allege Defendant's "capacity to sue or be sued." Dkt. 24 at 1–2. His reliance is misplaced. *Darby* itself indicates that the burden rests on the plaintiff. *See Darby*, 939 F.2d at 314. Therefore, because Plaintiff fails to plead that Defendant is a "separate legal entity having jural authority," he fails to state a claim upon which relief can be granted. *See Hutchinson*, 2010 WL 5830499, at *1 (citing *Propes*, 2005 WL 1177880, at *4).

In addition, it does not appear that the City of Allen granted Defendant jural authority. Indeed, the City of Allen expressly reserved for itself the power to "sue and be sued." CITY OF ALLEN, TEX., CODE OF ORDINANCES, art. 1, § 1.03A ("The City of Allen may . . . sue and be sued . . . and shall have all powers granted to cities by the constitution and laws of the State of Texas, together with all the implied powers necessary to carry into execution all the powers

granted."). Nor does it appear that the City of Allen provided any similar grant of authority to Defendant. *See generally id.* art. 2 (establishing a police department without granting it the capacity to sue and be sued). Without an express grant of jural authority from the City of Allen, Defendant is not amenable to suit and, therefore, the claims against it must be dismissed. *See Darby*, 939 F.2d at 313–14. Accordingly, the Second Motion to Dismiss (Dkt. 22) should be granted.

**B.      Substantive Challenge**

In the Second Motion to Dismiss (Dkt. 22), Defendant argues that even if it was a jural entity subject to suit, Plaintiff fails to allege he was unlawfully seized in violation of the Fourth Amendment; that is, Plaintiff fails to sufficiently allege that his arrest was not supported by probable cause. Dkt. 22 at 7–9. Defendant further contends that, regardless of the merits of Plaintiff's constitutional claim, Plaintiff has not successfully pled the elements necessary to establish municipal liability. *See id.* at 10–11.

Section 1983 provides:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983 (emphasis added). Historically, the Supreme Court construed "person" narrowly, only permitting recovery against the *individual* responsible for a constitutional violation. *See Monroe v. Pape*, 365 U.S. 167, 190–91 (1961), *overruled by Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, the Supreme Court has since expanded the definition of "person"

8

to include municipalities. *See Monell*, 436 U.S. at 690, 694–95. Thus, "[i]t is now "well-established that municipalities are deemed to be 'persons' susceptible to suit under [§] 1983." *Williams v. City of Nacogdoches*, No. 21-cv-71, 2022 WL 18399620, at *4 (E.D. Tex. Dec. 21, 2022) (citing *Monell*, 436 U.S. at 690). As a preliminary matter, to state a claim under § 1983, the plaintiff must allege that he was subjected to a constitutional violation. *See* 42 U.S.C. § 1983 (requiring a federal constitutional or statutory violation).

1. **Underlying Constitutional Claim**

In the Fifth Amended Complaint (Dkt. 20), Plaintiff alleges an underlying constitutional claim—Fourth Amendment malicious prosecution. *See* Dkt. 20 at 3. In the Second Motion to Dismiss (Dkt. 22), Defendant argues that Plaintiff fails to allege his arrest was not supported by probable cause and, thus, fails to allege the arrest was unlawful. *See id.*[3] In the Supplemental Response (Dkt. 24), Plaintiff argues that he was "unlawfully seized." *See* Dkt. 24 at 2. However, Plaintiff concedes the existence of probable cause that he committed traffic infractions. Indeed, he admits "that the entire arrest would have been justified had it been treated as one for the traffic infractions alone." *Id.* at 2. Plaintiff nevertheless contends that, as to the drug charge, the "officers failed to obtain probable cause." *See id.*

In the Fifth Circuit, a plaintiff must allege the following elements to state a claim for malicious prosecution:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

---

[3] Defendant also appears to challenge the remaining elements of Fourth Amendment malicious prosecution. After listing the elements, Defendant states: "In that [Plaintiff] has failed to sufficiently allege each of these elements, . . . his malicious prosecution claim also fails." Dkt. 22 at 9. Such a conclusory statement is not an argument, and the Court declines to consider it. Accordingly, the Court only addresses Defendant's probable cause argument.

*Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023) (quoting *Gordy v. Burns*, 294 F.3d 722, 727 (5th Cir. 2002)) (internal quotation marks omitted). A plaintiff "asserting a Fourth Amendment malicious prosecution claim under § 1983 must prove the above elements, in addition to the threshold element of an unlawful Fourth Amendment seizure." *Id.* (citing *Thompson v. Clark*, 596 U.S. 36, 43 n.2 (2022)).

"To remain within the bounds of the Fourth Amendment, a warrantless arrest must be supported by probable cause." *Sam v. Richard*, 887 F.3d 710, 715 (5th Cir. 2018) (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)). "Probable cause exists when all of the facts known by a police officer 'are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense.'" *Id.* (quoting *Texas v. Kleinert*, 855 F.3d 305, 316 (5th Cir. 2017)). As this is an objective inquiry, "[a]n arrest does not violate the Fourth Amendment if the officer making the arrest has probable cause to arrest the defendant for any crime, regardless of whether the defendant can be lawfully arrested for the crime for which the officer states or believes he is making the arrest." *United States v. Bain*, 135 F. App'x 695, 696 (5th Cir. 2005) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153–55 (2004)). Such an arrest may be predicated on even minor, non-arrestable traffic offenses. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 348–50 (2001) (licensing the constitutionality of an arrest for a fine-only traffic offense); *Reid v. Henry County*, 568 F. App'x 745, 748–49 (11th Cir. 2014) ("The existence of a traffic violation can provide an officer with . . . probable cause to make an arrest, even though the offense is minor or normally punishable by a monetary citation, and even if the officer had no knowledge of that violation at the time. As long as probable cause existed to arrest the suspect for any offense, the arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges." (internal citations omitted) (citing *Atwater*, 532 U.S. 318)); *see also Calhoun*

10

*v. Villa*, No. 16-3001, 2017 WL 3701971, at *3 (S.D. Tex. Aug. 7, 2017) ("[T]he Supreme Court made it clear that '[t]he Fourth Amendment does not forbid a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine.'" (quoting *Atwater*, 532 U.S. at 318)), *R. & R. adopted*, 2017 WL 3670028 (S.D. Tex. Aug. 24, 2017), *aff'd*, 761 F. App'x 297 (5th Cir. 2019).

In the present case, there can be no unlawful Fourth Amendment seizure because, as Plaintiff acknowledges, the arresting officers had probable cause to believe he committed multiple traffic infractions. *See* Dkt. 24 at 2 (conceding that "the entire arrest would have been justified had it been treated as one for the traffic infractions alone"). Therefore, there has been no unconstitutional seizure. Without an underlying constitutional violation, Plaintiff fails to state a claim. Thus, the Second Motion to Dismiss (Dkt. 22) should be granted.

### 2. Failure-to-Train Claim[4]

A municipality cannot be held vicariously liable for the wrongs of its employees. *See Monell*, 436 U.S. at 691. It may only be held liable when an "official municipal policy of some nature caused a constitutional tort." *Id.* One theory of establishing municipal liability is failure to train.

---

[4] The Court construes the Fifth Amended Complaint (Dkt. 20) as alleging a failure-to-train claim against Defendant. As written, it is impossible to determine whether Plaintiff intends to allege alternative theories of liability. For example, one sentence of the Fifth Amended Complaint (Dkt. 20) reads:

> Officers concluded that they were not adequately trained to field test evidence and that their official custom is to send alleged evidence into their labs for testing and that one could not be administered, however officers unlawfully seized the plaintiff following their inadequate official training policy, as a result therefor because of the municipalities [sic] failure to field test train their officers to be able to act, in this case, deprived a person of his fourth amendment constitutional right to be free from an unlawful seizure by which the policymaker creating the policy had construable knowledge to be aware of.

Dkt. 20 at 2. To the extent Plaintiff intends to assert other theories of liability, the Court encourages Plaintiff to separate those theories into different sections.

11

To establish municipal liability for a "failure-to-train claim, a plaintiff must 'prove that (1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.'" *Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018)). "To show deliberate indifference, a plaintiff normally must allege a 'pattern of similar constitutional violations by untrained employees.'" *Id.* (quoting *Peña*, 879 F.3d at 623).

In the Fifth Amended Complaint (Dkt. 20), Plaintiff alleges that Defendant failed to "adequately train" its officers "to field test evidence." Dkt. 20 at 2. As a result of this "inadequate training policy," Plaintiff alleges that his Fourth Amendment rights were violated. *See id.* In the Second Motion to Dismiss (Dkt. 22), Defendant argues that, assuming there was a constitutional violation, Plaintiff fails to allege that Defendant acted with deliberate indifference. Dkt. 22 at 10. Defendant reaches this conclusion because "[Plaintiff] seemingly only references a single incident" of purported misconduct—his arrest. *See id.* In the Supplemental Response (Dkt. 24), Plaintiff contends that he alleges multiple incidents of misconduct, including his arrest, the search of his vehicle, and the failure to field-test the allergy medicine. *See* Dkt. 24 at 3. Plaintiff misunderstands what must be alleged to demonstrate deliberate indifference.

"To show deliberate indifference, a plaintiff normally must allege a 'pattern of similar constitutional violations by untrained employees.'" *Hutcheson*, 994 F.3d at 482 (quoting *Peña*, 879 F.3d at 623). The municipality must be put on "actual or constructive notice" of the purported violation. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Bd. of Cnty. Comm'rs. v.*

*Brown*, 520 U.S. 397, 410 (1997)). Thus, "contemporaneous or subsequent conduct cannot establish a pattern of violations." *Id.* at 63 n.7.

In the present case, Plaintiff alleges that Defendant should be held liable for its failure to train its employees to conduct field tests. *See* Dkt. 20 at 2 (complaining of Defendant's "failure to field test train [its] officers"). Thus, Plaintiff must point to a pattern of prior incidents where Defendant's failure to train its officers to conduct field tests caused similar "constitutional violations." Plaintiff has failed to do so. He merely points to "incidents involving [his] arrest"—all of which occurred on the same day. *See* Dkt. 24 at 2–3.

Therefore, even assuming Plaintiff's rights were violated, he fails to allege that Defendant acted with deliberate indifference. As such, Plaintiff fails to state a claim, and the Second Motion to Dismiss (Dkt. 22) should be granted.

**C.**   **Leave to Amend**

A "plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted). Further, a *pro se* litigant should generally be offered an opportunity to amend his complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Id.* at 768 (quoting *Bazrowx*, 136 F.3d at 1054). The Court can deny leave to amend where such an amendment would be futile. *See, e.g.*, *Isom v. U.S. Dep't of Homeland Sec.*, No. 20-cv-948, 2021 WL 2232052, at *3 (E.D. Tex. Apr. 28, 2021), *R. & R. adopted*, 2021 WL 2224345 (E.D. Tex. June 2, 2021).

In the present case, the Court finds that permitting Plaintiff to amend his complaint is

warranted. Although Plaintiff has amended his complaint several times, *see* Dkts. 11, 13, 15, 17, 20, this is the first time the Court has addressed the sufficiency of Plaintiff's allegations. In addition, many of the infirmities identified by this Report and Recommendation may be remedied in an amended complaint. For example, Plaintiff may substitute Defendant for the jural entity. Furthermore, Plaintiff could potentially allege alternative theories of municipal liability that may survive dismissal. Therefore, the Court recommends that Plaintiff be given leave to amend his complaint.

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that the Second Motion to Dismiss (Dkt. 22) be **GRANTED**.

The Court further recommends that Plaintiff's claims against Defendant be **DISMISSED WITH PREJUDICE**.

The Court further recommends that Plaintiff be given leave to file an amended complaint no later than fourteen (14) days after the entry of a Memorandum Adopting Report and Recommendation, if any.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been

served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 20th day of November, 2023.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE